UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: |
| | ) | |
| Scott G. Baker, Robyn Baker, and | ) | |
| OneWestBank, | ) | |
| | ) | |
| Defendants. | ) | |

## Complaint

The United States of America, under 26 U.S.C. §§ 7401 and 7403, with the authorization of the Secretary of the Treasury and at the direction of the Attorney General of the United States, brings this action against the above defendants to collect certain unpaid federal tax liabilities assessed against Scott Baker and to enforce federal tax liens upon property that is held by Robyn Baker as Scott Baker's nominee or that was fraudulently conveyed to Robyn Baker, and to enforce federal tax liens that have attached to an interest in property held by Robyn Baker. In support thereof, the United States alleges as follows:

## Jurisdiction and Parties

1. Jurisdiction over this action is conferred upon this Court under 28 U.S.C. §§ 1331, 1340 and 1345 and 26 U.S.C. §§ 7402 and 7403.

2. Scott Baker resides within the jurisdiction of this Court.

3. Robyn Baker resides within the jurisdiction of this Court.

4.      OneWestBank is located at 6900 Beatrice Drive, Kalamazoo, Michigan 49009 and

is named as a party to this action because it may claim an interest in the property

upon which the United States seeks to enforce its liens.

5.      The property upon which the United States seeks to enforce its federal tax liens

consists of real property located in Plymouth County, Massachusetts with an

address of 667 Main Street, Hingham, Massachusetts (hereinafter the "Property")

and the following legal description:

A certain parcel of land together with buildings thereon situated in that part of said
Hingham known as South Hingham, containing six acres more or less, and
bounded and described as follows:

NORTHERLY        by land formerly of F.L. Cushing and now formerly of
William H. Storrs;

EASTERLY         on Main Street

SOUTHERLY        on land formerly of the heirs of Robert Cushing and Ezekiel
Fearing, deceased and now or formerly of F. Parker and Jean S. Troland and Helen
P. Burns, and

WESTERLY         by Crooked Meadow River on land formerly of Elijah
Whiting, and now or formerly of Chester H. and Eleanor B. Clemens and of
Charles Spaulding.

## Count I - Collection of Unpaid Tax Liabilities of Scott Baker

6.      On the dates indicated below, a delegate of the Secretary of the Treasury of the

United States of America made assessments against defendant Scott Baker as

follows:

| Tax Period | Tax Type | Assessment Date | Amount Assessed | Unpaid Balance of Assessment as of 05/01/2013 |
|---|---|---|---|---|
| 1997 | 1040 | 03/14/2009 | $    99,938.00 | $    159,925.56 |
| 1998 | 1040 | 03/14/2009 | $   165,168.00 | $    265,296.66 |
| 1999 | 1040 | 05/20/2010 | $   160,492.80 | $    267,096.26 |
| 2000 | 1040 | 05/20/2010 | $   209,572.80 | $    348,776.46 |
| 2001 | 1040 | 05/20/2010 | $   392,059.20 | $    676,590.43 |
| 2002 | 1040 | 03/14/2009 | $1,449,295.20 | $ 2,719,765.06 |
| | | | **Total:** | **$4,437,450.43** |

7.      Notice of the assessments listed in paragraph 6 and demand for their payment was duly made upon Scott Baker.

8.      Despite the notice of assessments and demand for payment, Scott Baker has failed, neglected or refused to fully pay the assessed liabilities listed in paragraph 6 and there remains due and owing $4,437,450.43 as of May 1, 2013, plus statutory additions and interest according to law.

## Count II - Enforcement of Federal Tax Liens

9.      The United States incorporates by reference the allegations in paragraphs 1 through 8 above.

10.      In 2002, Baker and a college friend sold eight Planet Fitness gyms to Bally Fitness for approximately $14.7 million.

11.      In order to shelter the large capital gain from the sale, Baker used the Son-of-Boss tax shelter to create a huge fictitious loss in 2002. *See Fidelity Intern. Currency Advisor A Fund, LLC, by Tax Matters Partner v. United States*, 661 F.3d 667 (1st

Cir. 2011) (concluding that Son-of-Boss tax shelter was a sham lacking economic substance used by taxpayers to create fictitious losses to offset taxable gains).

12.     In 2003, Baker used the false losses generated by the Son-of-Boss tax shelter to offset his gain from the sale of the gyms in 2002 and also filed amended returns for the 1997 and 2001 tax years, carrying back the sham loss to offset his income in those years and claiming—and receiving—large refunds.

13.      On August 22, 2005, Scott and Robyn Baker purchased the Property as tenants by the entirety for $1,622,500.

14.     The property consists of a six-acre lot improved with a house containing 3,569 square feet with five bedrooms and 3 and ½ bathrooms with an estimated fair market value of $1.3 million.

15.     On August 25, 2005, the IRS opened an examination of Baker's 2002 income tax return.

16.     In 2006, Baker elected to participate in the Global Settlement Initiative offered by the IRS in Announcement 2005-80 to resolve his participation in the Son-of-Boss tax shelter.

17.     While Baker was participating in the Global Settlement Initiative, he sold other real estate for over $1 million without paying any of the sales proceeds to the IRS for his federal tax liability.

18.     The sales proceeds were deposited in the C & S Realty Trust Account (using the initials of the Bakers' minor children) at the South Shore Savings Bank.

19.    Robyn Baker has sole signature authority for this account and uses her daughter's
       social security number as the EIN for the trust.

20.    Funds from this account were used by the Bakers to make a large mortgage
       payment on the Property and by Robyn Baker for her personal expenses and
       family living expenses.

21.    All of the proceeds of the sales of real estate have been disbursed by Robyn Baker
       and nothing remains in the South Shore Savings Bank account.

22.    After Baker had sold the real property above and transferred the sales proceeds to
       the C & S Realty Trust Account for the Bakers to use for their personal expenses,
       his only remaining assets were the Property and two parcels in New Hampshire.

23.    On February 22, 2007, the S & R Realty Trust was set up (using the initials of
       Scott and Robyn Baker), naming Robyn Baker as the trustee and Robyn Baker and
       the Baker's two minor children as the sole beneficiaries.

24.    On February 22, 2007, after Scott and Robyn Baker learned that Scott Baker's
       2002 federal income tax return was under investigation and after Baker knew he
       had incurred a federal tax debt beyond his ability to pay, Scott and Robyn Baker
       executed a quitclaim deed transferring the Property to Robyn Baker as trustee of
       the S&R Realty Trust for no consideration. At the time the quitclaim deed was
       executed Scott Baker was insolvent.

25.    On the same day the Property was transferred to the S & R Trust, a mortgage in
       the amount of $1,157,000 was recorded on the property in favor of Schaefer

Mortgage Corporation, which mortgage was subsequently transferred to defendant OneWestBank.

26.     On March 16, 2007, the IRS informed Baker that he was ineligible for the Global Settlement Initiative because he was unable to fulfill the requirement that he pay all taxes, interest, and penalties due.

27.     On January 11, 2008, Scott and Robyn Baker filed a joint petition for divorce, citing an irretrievable breakdown in the marriage.

28.     On January 10, 2008, the day before the Bakers filed for divorce, the Bakers executed a separation agreement.

29.     Despite Massachusetts law providing that marital assets be equitably distributed, and despite the fact that the Property had purportedly been transferred to a trust, the separation agreement provided that all of the Bakers' real property (the Property and New Hampshire parcels referenced above) be transferred to Robyn Baker, leaving Scott Baker with no assets.

30.     The separation agreement further provided that Scott Baker, despite the divorce, would continue to reside at the Property.

31.     The separation agreement further provided that Scott Baker continue to make mortgage payments on the Property.

32.     On January 17, 2008, Robyn Baker, as trustee of the S&R Realty Trust, transferred the Property to herself for no consideration by quitclaim deed.

33.     On May 29, 2008, the divorce became final.

34.     Scott Baker continues to reside at the Property with Robyn Baker and their two teenaged children and to pay for the mortgage and other property expenses.

35.     Shortly after the divorce was finalized, in May of 2009, Robyn Baker began working for The Right One as a "relationship consultant."

36.     A press release announcing her new position dated May 11, 2009, roughly a year after the divorce was finalized, stated that Robyn Baker "resides in Hingham with her husband and two children."

37.     On June 3, 2008, Scott Baker requested a mortgage payment modification.

38.     In this request, made approximately one month after the divorce was finalized, Baker stated that "I was the owner of a business and sold the business to Bally Total Business and retired with my wife and two kids."

39.     As of January 7, 2010, over a year after the divorce was finalized, the website for Robyn Baker's business, betterspaces.net, stated that she lived with her husband and two children in Hingham, Massachusetts.

40.     Robyn Baker's betterspaces website further stated that her husband was a builder and that she worked helping him design layouts and space needs.

41.     Under 26 U.S.C. §§ 6321 and 6322, on the dates of assessment set forth in paragraph 8, federal tax liens arose in favor of the United States upon all property and rights to property belonging to Scott Baker, including his interest in the Property.

42.     On or about November 2, 2009 and August 10, 2010, the Internal Revenue Service recorded a Notice of Federal Tax Lien at the Plymouth County Registry of Deeds

referencing the federal income tax assessments against Scott Baker in paragraph 8 above.

43.   On or about August 24, 2010, the Internal Revenue Service filed a Notice of Federal Tax Lien at the Plymouth County Registry of Deeds naming Robyn Baker as Scott Baker's nominee.

44.   The Bakers' supposed divorce is a sham to facilitate transferring property from the name of Scott Baker to the name of Robyn Baker to hold the taxpayer's interest as his nominee in order to keep the property from Scott Baker's major creditor, the United States.  The lien for Scott Baker's tax liability continues to attach to his interest in the property.

45.   In the alternative, the taxpayer's interest in the Property was conveyed to the trust for no consideration at a time when the taxpayer was insolvent or was rendered insolvent by the conveyance and the conveyance constitutes a fraudulent conveyance as to the United States as a creditor of Scott Baker.  The Property remains subject to collection for Scott Baker's tax liability even though it was subsequently conveyed to Robyn Baker for no consideration.

46.   All payments made with respect to the Property by Scott Baker after March 13, 2009, were encumbered by the lien which arose upon the assessments against him. To the extent payments by Scott Baker after March 13, 2009, were made with respect to an interest in the Property not held for him by Robyn Baker in a nominee capacity and not subject to collection by the United States by virtue of fraudulent conveyance, the lien which encumbered the payments transferred to the

interest in the property and that interest is subject to enforcement of the lien for the collection of Scott Baker's taxes under the theory of lien tracing.

47.     Robyn Baker, in her individual capacity and as the trustee of the C & S Realty Trust, received money owed by Scott Baker to the United States and subject to federal tax liens, and used these funds to pay for the mortgage on the Property and for personal expenses.

48.     Robyn Baker received this money after she knew of the tax liabilities owed by Scott Baker to the United States and after she knew that federal tax liens encumbered such property.

49.     Robyn Baker has appropriated Scott Baker's property for her own use in derogation, diminution, and destruction of the superior interests of the United States of America.

        **WHEREFORE,** the United States requests that this Court:

(A)   Enter Judgment in favor of the United States against Scott Baker in the amount of $4,437,450.43 as of May 1, 2013, plus statutory additions and interest according to law;

(B)   Determine and adjudge that the legal title to Scott Baker's interest in the property was transferred to Robyn Baker as his nominee and continues to be held by Robyn Baker as nominee of Scott Baker and subject to the tax liens described above;

(C)   In the alternative determine and adjudge that Scott Baker's interest in the property was fraudulently conveyed to avoid collection of the taxes and is subject to collection for Scott Baker's taxes;

(D)   Determine and adjudge that the payments by Scott Baker made with respect to the property after March 13, 2009, were encumbered with the lien for Scott Baker's tax liabilities and that to the extent payments made by Scott Baker after March 13, 2009 were made with respect to an interest in the property not held for him by Robyn Baker in a nominee capacity and not subject to collection by the United States by virtue of a fraudulent conveyance, the lien which encumbered the payments transferred to the interest in the property;

(E)   Order that the federal tax liens upon the Property be enforced, and that the Court order the sale of the property by an officer of this Court and distribute the proceeds of the sale to such parties and in such amounts as the Court determines;

(F)   To the extent the Court finds that the tax liens encumbering Scott Baker's property and rights to property do not attach to the property, but that his interest in the property was fraudulently conveyed, the property be sold and the proceeds of the interest that was fraudulently conveyed paid to the United States pursuant to Mass Law § 109A, §5.

(G)   Determine and adjudge that Robyn Baker, individually and in her capacity as a trustee of the C & S Realty Trust and S & R Realty Trust, has tortuously interfered with the federal tax liens and that she is liable for the amount of property of Scott Baker's property that she has appropriated for her own use in derogation,

diminution, and destruction of the superior interests of the United States of America.

(H) Enter Judgment against Robyn Baker and in favor of the United States in the amount of $1,157,000 as a transferee for decreasing the value the Property by encumbering the Property with a mortgage after the Property was fraudulently conveyed to her, plus judgment for the value of the other real properties fraudulently conveyed to her or to trusts under her control in diminution of the federal tax liens, plus damages for her tortious interference with the federal tax liens through the conduct described above, plus statutory additions and interest according to law; and

(G) Award the United States its costs and such further relief as the Court deems just and proper.

Dated: May 1, 2013.

KATHRYN KENEALLY
Assistant Attorney General

s/Michael R. Pahl
MICHAEL R. PAHL
Mn. Bar. No. 0234539
Trial Attorney, Tax Division
U.S. Department of Justice
Post Office Box 7238
Ben Franklin Station
Washington, D.C.  20044
Telephone: (202) 514-6488
Email: michael.r.pahl@usdoj.gov