UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 13-11078-RGS

UNITED STATES OF AMERICA

v.

SCOTT G. BAKER and ROBYN BAKER

MEMORANDUM AND ORDER
AMENDING THE JUDGMENT

February 19, 2016

STEARNS, D.J.

The court entered a judgment in this convoluted tax case on October 23, 2015. The judgment was based on thirty-nine pages of findings of fact (FoF) and rulings of law filed by the court on August 17, 2015. The delay in entering the judgment was caused by a dispute between the parties over the content of the Government's Proposed Form of Judgment. In resolving the dispute, the court made clear that it had not adopted the nominee and lien tracing theories that the Government had advanced as alternative theories justifying the seizure of the Baker's jointly-owned marital property in satisfaction of Scott Baker's tax debt. J. ¶ 7. The October 23, 2015 judgment also noted that the disposition of escrowed funds (the IMA funds) that had accumulated from an unexpected bankruptcy recovery remained

unresolved.  (The IMA funds had their origin in an improvident investment made by Scott Baker in 2003 and 2004. *See* FoF ¶¶ 20-21, 25).  The court indicated in the judgment that it would "separately adjudicate the matter unless the parties are able to come to an agreement on an appropriate division of the escrowed funds." J. ¶ 6.  The parties having not reached such an agreement, the court will now keep its word and adjudicate this remaining issue and issue a final judgment.

By the time of trial, the Bakers (although still living together) were formally divorced.  In 2oo8, as part of an uncontested divorce proceeding, the Bakers entered into a Separation Agreement purporting to divide their marital assets.  While the court made no ruling on the validity of the divorce itself, it found that the Separation Agreement fraudulently transferred substantial assets to defendant Robyn Baker for little or no consideration in an effort to defeat the collection efforts of the Internal Revenue Service (IRS) on taxes due and owing from Scott Baker.[1]  After a trial, the court ordered

---

[1] The Tax Court had previously ruled that Robyn Baker had no spousal liability for Scott Baker's tax machinations and debt as the statute of limitations had run on any claim the IRS had against her individually.  The Government seizes on the Tax Court proceedings in which Robyn Baker disclaimed any interest in the IMA funds to argue that she should now be judicially estopped from making a claim to the contrary.  United States' Response to Robyn Baker's Claim for Her Portion of the Escrowed Funds (Government's Response) Dkt. #105 at 9.  As a factual matter, in 2009,

certain real property to be sold and that Scott Baker's one-half interest in the proceeds of the sales be paid over to the IRS.[2]  The court also ordered that Scott Baker's interest in the IMA funds (that had been transferred to Robyn Baker as the designated Trustee of the Baker Trust) also be forfeited to the IRS.  J. ¶ 6.

As explained in the court's August 2015 findings, in November of 2012, Robyn Baker received a payout of $202,562 from the IMA Trustee.  FoF ¶ 86.  She then invested the entire $202,562 in Design Decisions, a home purchase and remodeling business owned by Leslie Smith, a personal friend.  *Id.* ¶ 87.  Both of the Bakers benefitted from the investment – Scott Baker was employed by Design Decisions to do the remodeling work, while for Robyn Baker, the investment proved very profitable.  Sometime thereafter, the IMA Trustee made a second payout of $84,000 to Robyn Baker, which

---

when the Tax Court heard the case, no one (including the Government) believed that the IMA investment had any value.  More to the point, "[j]udicial estoppel is not implicated unless the first forum *accepted* the legal or factual assertion alleged to be at odds with the position advanced in the current forum."  *Gens v. RTC*, 112 F.3d 569, 572 (1st Cir. 1997) (emphasis in original).  Robyn Baker's claim to the IMA funds played no role in the Tax Court's decision.

[2] Having found the Separation Agreement void, the court applied an equitable 50/50 division of the couple's assets consistent with the common-law community property system adopted by Massachusetts and recognized as valid by the IRS.

she spent, apparently to pay the couple's escalating legal fees.   *Id.* ¶ 89.

Subsequent to the entry of the judgment, the court learned that the value of the funds being held in escrow was much higher than had been anticipated given the profitability of Robyn Baker's investment in Design Decisions.   The funds in escrow now total $599,078.77.[3]

Although the parties do not agree on the ultimate disposition of the funds, they do agree that further litigation of the case will only result, as far as Robyn Baker is concerned, in a dissipation of the funds that remain and from the Government's point-of-view, a further accumulation of transactional costs.   The parties have suggested various mechanisms or

---

[3] The most coherent explanation of how the escrow funds came into being can be found in the post-Judgment pleadings, specifically Robyn Baker's Claim for Her Portion of the Escrowed Funds (Robyn Baker's Claim) Dkt. #100 at 2-3, and the Government's Response Dkt. #105 at 6-7. According to the Government, it did not learn that the IMA payouts were a recoverable asset until it took Robyn Baker's deposition in April of 2014, during which she disclosed receipt of both the $202,692 and the $84,000 IMA checks.  She also disclosed the investment in Design Decisions.  The Government then learned from Leslie Smith, the principal of Design Decisions, that the Bakers were to be paid over $500,000 as their share of the proceeds of the venture.  Under threat of an IRS lien, Design Decisions paid the Bakers' share, $528,962.28, into escrow.  This sum was then supplemented by a third (also unanticipated payout) from the IMA Trustee of $70,116.49, for a total escrow amount of $599,078.77.  After some skirmishing by the parties over the proper handling of the escrow, the court ordered the funds transferred from the Escrow Agent to the Government to act as their custodian pending the entry of a final judgment by the court.  J. ¶ 6.

doctrines under which the court might proceed – equitable recoupment, common-law setoff, a resuscitated lien tracing theory, constructive trust, and so on, but the simplest solution is the one advanced by the Government, and as I gather from Robyn Baker's pleadings, also acceptable to her. *See* Robyn Baker's Claim Dkt. #100 at 7 (consenting to the court's jurisdiction for purposes of an equitable division of the escrowed funds).

The court rules that under the original Complaint, as tried, the court has jurisdiction over the IMA payout funds and any proceeds directly traceable to the investment of those funds.[4] These proceeds include the additional IMA payout and the profits paid over in escrow by Design Decisions. The court further sees no reason to depart from the 50/50 equitable formula that it consistently applied in dividing the real property and the IMA assets (as then known to the court). Consequently, the court will amend the existing judgment to specify the division of the escrow funds as follows. Scott Baker's half portion – that is, 50% of the sum of the

---

[4] While Robyn Baker's counsel correctly points out that the original Complaint filed by the Government did not specify the IMA funds as property it sought to seize in satisfaction of Scott Baker's tax debt, the subject of the IMA payouts was litigated extensively at trial and figured prominently in the court' findings. *See* FoF ¶¶ 15, 20-21, 62, 85-89. In any event, as the Civil Rules and the case law make clear, the court has broad authority to conform the pleadings to the evidence adduced at trial. *See Brandon v. Holt*, 469 U.S. 464, 471 (1985).

escrowed funds, $599,078.77, and of the $84,000 that was never deposited in escrow or invested by Robyn Baker (but spent on legal fees) – results in a total award to the IRS of $342,539.39.   The balance of $256,539.38 is to be returned to Robyn Baker.[5]

                SO ORDERED.

                /s/ Richard G. Stearns
                UNITED STATES DISTRICT JUDGE

---

[5] I do not credit Robyn Baker's assertion that she invested an additional $65,000 of her own money in Design Decisions (over and above the IMA funds).   There is no evidence in the record to support her claim in this regard.   I also reject the Government's assertion (which was not advanced at trial), that Robyn Baker should also forfeit $217,000 as Scott Baker's share of the proceeds of the sale of the couple's Humarock Property. These funds were deposited in the C&S Trust of which Robyn Baker was the sole Trustee (and of which the Bakers' children were the sole beneficiaries). FoF ¶ 27.   *See* Government's Response Dkt. #105 at 15-18.   Putting aside the late-blossoming of the argument, it ignores the fact that the sale of the Humarock Property occurred in 2007, before the Bakers' divorce in February of 2008.   FoF ¶ 33.   It also omits the fact that in 2007 and 2008 (prior to the divorce), $558,801 was paid out of the C&S Trust against the outstanding equity line of credit and mortgage on the Hingham Property.   *Id.* ¶¶ 33-34. The Government benefitted from the reduction of the debt on the Hingham Property when the court awarded it Scott Baker's one-half interest in the Property.