UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 13-11078-RGS

UNITED STATES

v.

SCOTT G. BAKER and ROBYN BAKER

MEMORANDUM AND ORDER
ON THE DISTRIBUTION OF ESCROWED FUNDS

September 22, 2017

STEARNS, D.J.

This matter is before this court on a remand from the First Circuit Court of Appeals for reconsideration of the division of escrowed funds as between the plaintiff United States and claimant Robyn Baker. By way of background, after a nonjury trial involving tax claims brought by the United States against Scott Baker, Robyn Baker's former husband, the court entered extensive findings of fact, which for present purposes are not disputed. The most immediately relevant of the findings led to the court's determination that the division of property agreed to by the Bakers upon the dissolution of their marriage in 2008 was undertaken fraudulently to avoid Scott Baker's tax obligations to the United States.[1]  *See* Memorandum and Order of

---

[1] While certain facts in the narrative of the court's findings appear to

August 17, 2015 (Dkt #86) at 35-38. After efforts at a mediated settlement failed, the court entered a final judgment dividing the Bakers' two remaining and reachable assets of value, their family home in Hingham, Massachusetts, and certain "Escrowed Funds"[2] equally between the United States and Robyn Baker. In doing so, the court stated that its 50/50 equitable division of the marital estate was consistent with "the common-law community property system adopted by Massachusetts." This statement was, of course, a glaring error, as the Court of Appeals pointed out. *See Baker*, 852 F.3d at 103. Massachusetts is not a community-property jurisdiction; rather, a division of marital assets following a divorce in Massachusetts is governed

---

implicate Robyn Baker in some aspects of the fraudulent tax scheme, the United States either failed to timely file or withdrew its claims against her. Consequently, there is no judicial finding that she, in the words of the Court of Appeals, was "guilty of fraud." *See United States v. Baker*, 852 F.3d 97, 99 n.1 (1st Cir. 2017)

[2] The Escrowed Funds consisted initially of an unanticipated recoupment by a Bankruptcy Trustee of a portion of the monies ($356,808) that the Bakers had lost as victims of a Ponzi-like tax shelter colloquially known as "Son of BOSS." The amount in escrow at last accounting had grown to some $600,000 by virtue of a successful investment made by Robyn Baker of a portion of the recouped funds. *See generally*, Dkt #115 at 4 n.3. The Escrowed Funds are the only remaining marital asset and are the subject of the government's renewed claim. The government is not contesting the court's 50/50 division of the Hingham property between it and Robyn Baker. Additionally, the United States has waived any interest in $84,000 disbursed by the Trustee that went directly to Robyn Baker, and which she spent on legal fees.

by the multi-factored test set out in Mass. Gen. Laws ch. 208, § 34.[3]

> [T]he court, after hearing the witnesses, if any, of each of the parties, shall consider the length of the marriage, the conduct of the parties during the marriage, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties, the opportunity of each for future acquisition of capital assets and income, and the amount and duration of alimony, if any, awarded under sections 48 to 55, inclusive. In fixing the nature and value of the property to be so assigned, the court shall also consider the present and future needs of the dependent children of the marriage. The court may also consider the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates and the contribution of each of the parties as a homemaker to the family unit.

In evaluating these fourteen mandatory and four discretionary factors, the court, unless there are good reasons to do otherwise, looks to the circumstances of the parties as of the date of the divorce proceeding. *Fazio v. Fazio*, 91 Mass. App. Ct. 82, 90 (2017) ("Although 'the marital estate is typically determined as of the date of the divorce trial,' . . . the trial judge has the discretion to choose another date when warranted by the circumstances

---

[3] The court's finding that the Bakers entered into the Separation Agreement in order to fraudulently transfer assets from Scott Baker to Robyn Baker does not entail a finding that the divorce decree itself was invalid. The government argues otherwise, contending that if the divorce was a sham, Robyn Baker has no claim to any of the funds. *See* Gov't Br. at 8. The Court of Appeals explicitly adopted this court's agnostic finding regarding the divorce, *Baker*, 852 F.3d at 105, and this adoption is now the law of the case.

and the relevant [section 34] factors . . . ."). Here, it would be nonsensical to value the single remaining marital asset (the Escrowed Funds) as of any date but today. On the other hand, in applying the section 34 factors in determining an equitable division of the Escrowed Funds, there is no reason not to hew (mostly) to the "preferable" practice of looking to the date on which the divorce became final. *See Adams v. Adams*, 459 Mass. 361, 379 n.14 (2011). That date is May of 2008.

At that point, the Bakers had been married for ten years. During the marriage, Robyn Baker had worked principally as a homemaker and primary caretaker for the Bakers' two young children. Both of the Bakers are relatively young and in good health. While Scott Baker is not highly educated, he is hardworking and a mostly successful businessman with his own construction company. He also managed the couple's finances. His earnings enabled the Bakers to maintain an upper middle class life style with a large home in a fashionable South Shore community, a summer beach home in Scituate, and properties in New Hampshire.[4] Although Robyn

---

[4] Massachusetts does not recognize the "discarded idea that the wage earner is entitled to most if not all of the benefits of the paid work." *Adams v. Adams*, 459 Mass. at 391 (quoting *deCastro v. deCastro*, 415 Mass. 787, 794 (1993)).

4

Baker did not have an extensive work history outside of the home, after the divorce, she launched a successful career as a medical recruiter and profitably invested (prior to their being escrowed) the Funds in a home design business that also provided gainful employment to Scott Baker. By all evidence neither of the Bakers nor their children are in dire financial straits.

While both of the Bakers exhibited character flaws and human failings during the course of their marriage (and since), theirs was a nonabusive and affectionate relationship, and by all accounts, they have been good parents to their children. It is true that Scott Baker's ill-considered stratagems for tax avoidance were principally to blame for the parlous state of the Bakers' finances leading to their divorce and their many legal entanglements. Of equal significance, although the now-voided Separation Agreement left the Hingham home to Robyn Baker (along with most of the couple's physical assets), it specifically eschewed any payment of alimony or child support (and none has been forthcoming since).[5] On the other hand, Scott Baker

---

[5] The Separation Agreement provided for joint physical and legal custody of the two children who continued to live with Robyn Baker in the Hingham home. There is no evidence that the Bakers did not fulfill their joint obligation to support the children or that either bore a disproportionate share of the expenses involved. The Separation Agreement specifically acknowledged that the Hingham home was to be held in trust by Robyn

made roughly half of the monthly mortgage payments on the Hingham home before it was sold.[6] He also assumed responsibility for most of the Bakers' liabilities, including those arising from his construction business and his interest in a Planet Fitness franchise.[7]

Disregarding the fraudulent division of the Bakers' assets and liabilities in 2008, the question posed is whether a Probate Judge, then presiding over a contested divorce proceeding involving the Bakers, and applying the section 34 factors, would have considered a 50/50 division of the marital estate equitable or instead excessively favorable to Robyn Baker. I think she would have found it fair, particularly given the absence of alimony or child support, the realistic expectation that the bulk of future childrearing duties would fall to Robyn Baker, her (then) uncertain employment prospects, and her historical contributions to the family unit as a

---

Baker for the benefit of the children (although the home has since been sold to satisfy in part Scott Baker's tax liabilities – the $133,358 in net proceeds were divided between the United States and Robyn Baker).

[6] The government contends that Scott Baker made most of the mortgage payments, but as the Court of Appeals noted, there was insufficient credible evidence to support that contention (which was advanced as a part of the government's lien tracing theory). See *Baker*, 852 F.3d at 105.

[7] The value of the Planet Fitness franchise was hotly disputed at trial, although Scott Baker estimated its worth at $250,000.

homemaker. I find this case reasonably similar to *Adams v. Adams* when viewed through the prism of the Bakers' 2008 divorce. *Adams* involved a contested divorce following a nine-year marriage. Because of the husband's successful career in an investment advisory firm, the couple enjoyed an upper-class lifestyle with a summer home in Florida and a primary home in Chestnut Hill. The wife had dedicated herself during the marriage to maintaining the household and serving as the primary caregiver for the couple's four children. In approving the judgment of the Probate Court dividing the marital estate equally between the divorcing spouses, the Supreme Judicial Court observed that

> [h]ere, the judge diligently made findings on each of the mandatory factors enumerated in § 34, as required. . . . In addition, the judge's findings clearly stated the rationale for the equal property division. The judge found that the wife's "prolonged absence from the workforce would hinder her employability," and more importantly, although this was a mid-length marriage that could conceivably warrant less than equal division of property, the wife would "continue to have child-care and custodial parenting responsibilities of the four minor children for several years into the future." The judge also exercised his discretion to weigh spousal contributions to the marital enterprise, both financially and in homemaking, and recited many of the wife's significant contributions to child care, maintenance of property, financial management, and ministerial work, both during cohabitation and after separation.

*Adams v. Adams*, 459 Mass. at 391.

In addition to Robyn Baker's contribution to the family unit as a homemaker and mother, there is another discretionary factor under section 34 that supports the fairness of the court's 50/50 division of the Escrow Funds between Robyn Baker and the government (viz, Scott Baker). The court may consider the contribution of a spouse to the appreciation of the value of the marital estate. Here, the government has (ironically) inherited a windfall as a result of Robyn Baker's perspicacious decision to invest a substantial portion of the funds recovered by the Trustee in a business where it more than doubled in value.

## ORDER

For the foregoing reasons, the court, after considering the section 34 factors, reaffirms its decision to divide the Escrowed Funds equally between the government and Robyn Baker. The government, having waived a claim to the $84,000 of the Escrowed Funds previously spent by Robyn Baker, the division will be exact with no offset for the half-portion of the $88,000 due Scott Baker.

SO ORDERED.

/s/ Richard G. Stearns

UNITED STATES DISTRICT JUDGE